## PENNSYLVANIA R. CO. v. MARY BOWERS.

ERROR TO THE COURT OF COMMON PLEAS NO 1 OF PHILADEL-
PHIA COUNTY.

Argued January 29, 1889—Decided February 11, 1889.

1. A grant to a corporation, by an act of assembly which merely confers upon it a new right or enlarges an old one, without any consideration or any new or additional burden imposed upon it, is a mere license, and though accepted by the corporation may be repealed at any time.

2. The power of the legislature to barter away to a corporation the right to authorize the recovery of damages for acts of negligence resulting in death, or to limit the right, so as to make it a binding contract beyond the reach of subsequent legislatures, may well be doubted.

3. Section 2, act of April 4, 1868, P. L. 58, limiting the liability of railroad companies and common carriers for personal injuries and injuries resulting in death, was avoided by § 21, article III., of the constitution of 1874, even as to a corporation which had accepted its provisions.

4. Penn. R. Co. v. Langdon, 92 Pa. 21, so far as it relates to the effect of the constitution of 1874 upon the act of April 4, 1868, overruled: Philadelphia etc. Pass. Ry. Co.'s App., 102 Pa. 123; Johnson v. Crow, 87 Pa. 184; Christ Church v. Philadelphia Co., 24 How. 300, followed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 209 July Term 1888, Sup. Ct.; court below, No. 656 December Term 1886, C. P. No. 1.

On January 27, 1887, an action in case for negligence was brought by Mary Bowers against the Pennsylvania Railroad Co., to recover damages suffered by the death of her husband Thomas L. Bowers, alleged to have been caused by the negligence of the defendant company's employees.   Issue.

At the trial on January 11, 1888, it was shown that the said Thomas L. Bowers, by trade a carpenter and builder, was killed by being struck by a train at Comly street crossing, near Wissinoming station on defendant's road, about 6:45 P. M. on February 26, 1886.

The plaintiff's case having closed, the defendant put in evidence, inter alia, an extract from the minutes of the board of directors of the company, showing that at a meeting of said

board, held at the office of the company, at Philadelphia, on April 15, 1868, an act entitled "An act relating to railroad companies and common carriers, defining their liabilities and authorizing them to provide means of indemnity against loss of life and personal injury," approved April 4, 1868, P. L. 58, was read, and on motion it was resolved that the said act of assembly "as above recited, be, and the same is hereby accepted by the Pennsylvania Railroad Company."

At the close of the case upon the evidence, BREGY, J., instructed the jury, and then answered the points presented as follows, to wit:

The plaintiff requests the court to charge:

1. That the acceptance of the provisions of the act of April 4, 1868, by the board of directors of the defendant corporation, does not prevent the plaintiff from recovering a verdict in excess of $5,000, and that the jury should give a verdict for such sum as the deceased would probably have earned by his intellectual or bodily labor in his business or profession during the residue of his life and which would have gone for the benefit of his widow, without regard to the provisions of said act of April 4, 1868.

Answer: I affirm that point.[4]

2. That the limitation of liability for damages, claimed by defendant under and by virtue of the act of April 4, 1868, has been revoked or avoided, as to the defendant corporation, by the provisions of the twenty-first section of article III. of the constitution of Pennsylvania, known as the new constitution.

Answer: I will affirm that.[5]

The defendant requests the court to charge:

    *     *     *     *     *     *     *     *

6. In no event may a verdict exceed the sum of $5,000.

Answer: Refused.[3]

The jury returned a verdict in favor of the plaintiff for $14,500 damages. On June 20, 1888, a rule for a new trial was made absolute unless the plaintiff should release the damages recovered above the sum of $10,000, by a release to be filed within ten days; if such release be filed, rule discharged. A release having been filed within the time, judgment was entered

for the plaintiff for $10,000, when the defendant company took this writ, assigning as error, inter alia:

3. The refusal of defendant's point.[3]

4, 5. The affirmance of plaintiff's points.[4] [5]

*Mr. Geo. Tucker Bispham,* for the plaintiff in error:

1. In Hayes v. Commonwealth, 82 Pa. 523, decided in 1876, the law was declared to be that a charter of a corporation is such a contract as cannot be impeached by state authority except on proper cause shown, and that it was not the intention of the constitutional convention, even if it had the power committed by the amendment of 1857 to the legislature to alter the charters of corporations, to do so by virtue of any provision of the constitution itself. Then came the case of Penn. R. Co. v. Langdon, 92 Pa. 21, in which it was decided that the first part of § 2 of the act of April 4, 1868, P. L. 58, which contains the provision under consideration, was not avoided by § 21, article III., of the constitution. Moreover, it was held, that inasmuch as the Penn. R. Co. had formally accepted the provisions of the act of 1868, those provisions had become part of its charter, which was left in precisely the same condition as the new constitution found it.

2. But in Lewis v. Hollahan, 103 Pa. 425, this court apparently changed somewhat the views it had entertained and expressed in Penn. R. Co. v. Langdon, and ruled that § 21, article III., of the constitution did avoid the whole of § 2, of the act of 1868, so far as non-accepting companies were concerned. It is to be observed, however, that the court did not pass upon the question as to the effect of the constitutional provision upon the act quoad companies which had not accepted its provisions prior to the adoption of the constitution, for that question did not arise. Moreover, not only did that question not arise, but the court expressly approved the decision in Penn. R. Co. v. Langdon.

3. On February 15, 1886, Penn. R. Co. v. Duncan, 111 Pa. 352, was decided, and it has been argued that inasmuch as that case ruled that the company was responsible under the constitutional provision for property injured as well as for property taken, it must be inferred that in so deciding the court intended to depart from the ruling in Penn. R. Co. v. Langdon. But it is

submitted that this is an error, for when the proposition, viz.: whether Penn. R. Co. v. Langdon was still to be considered as the law, came before the court in Philadelphia etc. R. Co. v. Conway, 112 Pa. 511, the idea that Penn. R. Co. v. Langdon was overruled was distinctly repudiated. The doctrine of Penn. R. Co. v. Langdon has been affirmed in the recent case of Williamsport Pass. Ry. Co.'s App., 120 Pa. 1. In that case, where it was attempted to take away an express right granted to a corporation in its charter, by making it subject to a provision of the constitution of 1874 and the act of May 23, 1878, contradictory of that grant, this court said: "It has been said by this court on more than one occasion that the constitution of 1874 did not ipso facto repeal charters:" citing Hayes v. Commonwealth and Penn. R. Co. v. Duncan.

4. Further: Penn. R. Co. v. Duncan is distinguishable from the present case, in that here there was an express contract between the company and the state by which the former accepted the provisions of the act of 1868; whereas, in the former case the provisions of the law relied upon were held to be simply the general provisions in existence at the time the company bought the state works. There was, therefore, in that view of the matter, no contract other than that which grew out of the charter: Williamsport Pass. Ry. Co.'s App., 120 Pa. 1. Moreover, in Penn. R. Co. v. Duncan, the company sought to avail itself of a rule of damages which, it was held, the constitution had expressly repealed as to all corporations which could exercise the right of eminent domain; whereas here the constitutional clause simply repeals the act of 1868, but does not say expressly that the repeal shall affect a contract with a company which had accepted the act. The language of the constitution is, therefore, satisfied by preventing any future acceptance of the statute, and at the same time contract rights are preserved.

5. But, supposing for the sake of the argument, that the convention did intend that § 21 of article III. of the constitution should ipso facto avoid charters: the question then arises, had the convention the power thus to alter or repeal corporate charters? It is contended that the state did acquire the right by virtue of the provisions of the act of May 3, 1855, P. L. 423, and of the fourth constitutional amendment of 1857. But in the act of

1855, the power to annul is expressly conferred upon the legislature; the right to waive the exercise of that power is expressly conferred upon the same body, and it is the opinion of the same body which is to determine whether or not the power ought to be exercised in any given case. The amendment of 1857 is to the same effect. In that, as well as in the act of 1855, the legislature is the channel through which the people are to act in the matter of the repeal or modification of charters. " A constitutional convention is not the legislature, in the meaning of that amendment: " Hays v. Commonwealth, 82 Pa. 523; Williamsport Pass. Ry. Co.'s App., 120 Pa. 1.

*Mr. P. F. Rothermel,* for the defendant in error:

I. That the limitation of liability claimed by the defendant company by virtue of their alleged acceptance of the act of 1868, has been avoided by § 21, article III. of the constitution, clearly appears from the following cases: Penn. R. Co. v. Langdon, 92 Pa. 34; Lewis v. Hollahan, 103 Pa. 425; Penn. R. Co. v. Duncan, 111 Pa. 352. In Penn. R. Co. v. Langdon, it was assumed that the defendant had accepted the provisions of the act of 1868, and the court held that § 21 of article III. did not avoid the act for two reasons: (1) Because the constitutional provision " spoke for the future and avoided no existing acts; " (2) because, by accepting the provisions of the act, the company had made it a part of its charter, and hence it became a contract with the state which the constitution of the United States protected. Lewis v. Hollahan decided that the act of 1868 was a general law applying to non-accepting as well as to accepting corporations, and that § 21, article III., was applicable to existing as well as to future legislation and did avoid the act of 1868, thus destroying the first of the two grounds upon which Penn. R. Co. v. Langdon rested. The other ground, to wit, that the acceptance of the act of 1868 by the corporation made it a part of its charter rights of which it could not be deprived, was directly overruled as to defendant company by Penn. R. Co. v. Duncan.

II. But, whether Penn. R. Co. v. Duncan be regarded as ruling the present case or not, it is clear there are certain marked distinctions between the case under consideration and Hayes v. Commonwealth, 82 Pa. 523, and Williamsport Pass.

Ry. Co.'s App., 120 Pa. 1, which not only destroy the applica-bility of those cases here, but also establish that the repeal of the act of 1868 by § 21, article III. of our constitution, is not in conflict with the constitution of the United States.

1. An acceptance by the defendant company of the act of 1868, would not raise a contract within the constitutional provision. The mere grant of a franchise does not necessarily raise such a contract. At common law, a promise without con-sideration is not binding; so, a franchise granted without a consideration moving from the grantees is not binding upon the state: 2 Morawetz on Corp., §§ 1050, 1053. This prin-ciple is sustained by numerous adjudicated cases: Phila. etc. Pass. Ry. Co.'s App., 102 Pa. 129; Tucker v. Ferguson, 22 Wall. 527; Railroad Co. v. Supervisors, 93 U. S. 594; Salt Co. v. East Saginaw, 13 Wall. 373; Hewitt v. Railroad Co., 12 Blatch. 452; Railroad Co. v. Loftin, 30 Ark. 693. If the act in question had been incorporated into the original charter of the company, upon the faith of which the company was founded: Dartmouth College v. Woodward, 4 Wheat. 518; or, if the accceptance of the act had imposed some additional bur-den upon the company; or, if by reason of it they had been called to lay out and expend money or otherwise had suffered hurt, damage or detriment, the consideration would be mani-fest, and the act and its acceptance would constitute a contract binding upon the state. But no such feature attended the defendant company's acceptance of the act of 1868, if they did accept it.

2. It does not appear from the evidence, however, that the company ever did accept the act of 1868. The board of directors are not the corporation, but simply the agents of the corporation and with limited powers. Without the concurrence of the stockholders, the directors have no power to make or accept an alteration of the company's charter, unless the power to do this is expressly conferred upon them in the charter itself: 1 Morawetz on Corp., § 514; Baker's App. 109 Pa. 461; Marlborough Mfg. Co. v. Smith, 2 Conn. 583; Brown v. Gold and Silver Mining Co., 10 Phila. 32; 2 Mora-wetz on Corp., § 1059; Railroad Co. v. Harris, 27 Miss. 517; Clearwater v. Meredith, 1 Wall. 25; Mowry v. Railroad Co., 4 Bliss 78.

3. But, assuming that the defendant company accepted the provisions of the act of 1868, and that the acceptance made the act a part of its charter, could the legislature bind the state to confer upon the defendant company the vested irrevocable right to take human life, either intentionally or negligently, at an arbitrary limit? There are certain powers, generally called "police powers," the undiminished existence of which is essential to the welfare of the community. It must therefore be considered in excess of the powers delegated by the people to their legislature, to abridge these powers by any contract or grant of franchises: 2 Morawetz on Corp., § 1051; Cooley, Const. Lim., 574*. That the regulation of recoveries for negligence resulting in death falls within these powers, appears from the authorities. The maxim, Sic utere tuo ut alienum non leadas, is that which lies at the root of the power, and to whatever enactment affecting the management and business of private corporations it cannot fairly be applied, the power itself will not extend: Cooley, Const. Lim., 5th ed., *577; Thorpe v. Railroad Co., 27 Vt. 140 (62 Amer. D. 625). Prior to the act of April 15, 1851, P. L. 674, providing a recovery for negligence causing death, the defendant company was not liable to answer in damages in such cases, yet it has never been contended that that act was unconstitutional, though it imposed a liability to which under its charter it was not subject. Section 21, article III. of the constitution, imposes no greater liability. Its effect is the same as would be the re-enactment of the act of 1851.

OPINION, MR. CHIEF JUSTICE PAXSON:

The fifth assignment squarely raises the important question of this case. It alleges that the learned court below erred in affirming the plaintiff's second point. The point is as follows: "That the limitation of liability for damages claimed by the defendant under and by virtue of the act of April 4, 1868, has been revoked and avoided, as to the defendant corporation, by the provisions of the twenty-first section of article III. of the constitution of Pennsylvania, known as the new constitution."

The second section of the act of 1868, P. L. 58, limits the amount to be recovered in actions against railroad companies and common carriers, for negligence, to $3,000 in cases of per-

sonal injuries, and $5,000 in case of death. The fourth section of said act provides that "upon the acceptance of the provisions hereof, by any carrier or corporation, the same shall become a part of its act of incorporation." Upon the trial below the defendant company proved its acceptance of the provisions of this act, and claimed that by such acceptance the act of 1868 was written into its charter. The manner of the proof of this fact has been criticised. The acceptance as shown upon the trial was by a resolution of the board of managers, and not by a vote of the stockholders. We prefer, however, not to decide this case upon technical grounds, and shall treat the action of the managers as an acceptance by the company.

Section 21 of article III. of the constitution is as follows: " No act of the general assembly shall limit the amount to be recovered for injuries resulting in death, or for injuries to person or property; and in case of death from such injuries, the right of action shall survive, and the general assembly shall prescribe for whose benefit such actions shall be prosecuted. No act shall prescribe any limitation of time within which suits shall be brought against corporations for injuries to persons or property, or for other causes, different from those fixed by general laws regulating actions against natural persons, and such acts now existing, are avoided."

This clause of the constitution first came up for consideration, in connection with the act of 1868, in Pennsylvania Railroad Company v. Langdon, 92 Pa. 21. It was there held, Mr. Justice TRUNKEY dissenting, that the act of 1868 was not avoided by the above-recited clause in the constitution. The writer of this delivered the opinion in that case. It was followed by Lewis v. Hollahan, 103 Pa. 425, where it was said by Mr. Justice STERRETT: " The case of Pennsylvania Railroad Company v. Langdon, cited and relied on by the plaintiff in error, was well decided on other controlling questions, but we do not see our way clear to follow it as authority on the precise constitutional question involved in this case. One of the questions in that case was as to the acceptance by the company of the act of 1868. In this case the question does not arise." There was no dissent in that case. In a subsequent case, Philadelphia, Wilmington & Baltimore Railroad Company v. Con-

way, 112 Pa. 511, there was an attempt to raise the same question on the part of the above named railroad company. There was no proof on the trial below that the company had accepted the provisions of the act of 1868, and that case was decided upon other grounds. In delivering the opinion of the court I said: "It may not be out of place, just here to correct a misapprehension of the learned judge below in regard to Railroad v. Langdon. That case has not been overruled, as he supposes. Some of the reasoning by which it was supported is not sustained by the late case of Lewis v. Hollahan, and as my brethren are wiser than myself I cheerfully submit to their views. Moreover, if, when the main question comes up again, Railroad Company v. Langdon shall be found to be a mistake, it will afford me pleasure to join in overruling it." This was our latest deliverance upon this subject. The broad question is now fairly presented again; we have been aided by an exceptionally able argument, and it is fitting that we should now review our former ruling, and if necessary, correct it. I am free to say that my own views upon this question have undergone a serious change.

The first thought which an examination of it suggests is the effect of the acceptance by the defendant company of the act of 1868. If it was a contract with the state, based upon a sufficient consideration, and a contract which the state had the power to make, there would be room for the argument that it came within the principle of the well known line of cases commencing with Dartmouth College. The act of 1868, however, was not a part of the original charter of the company; its road was not constructed nor was a dollar expended upon the faith of it. So far as appears by this record, no consideration was paid for it. It was an additional franchise or right which the state granted to the company and which does not necessarily involve a contract. At common law a promise without consideration is not binding; so, I apprehend, a franchise granted without a consideration moving from the grantees of such franchise, is not binding upon the state. The rule as laid down in 2 Morawetz on Private Corporations, § 1050, is as follows: "A franchise is a mere legal right or privilege and may result from a simple legislative enactment without any contract between the state and the possessors of the privilege. There is a

plain distinction between a simple legislative enactment that a person or association shall be authorized to exercise certain rights or powers, and a contract or treaty made by the state through its legislature, that the person or association shall be entitled to exercise the rights or powers. If a franchise is the result of a mere legislative enactment, it may be undoubtedly cut short by a repeal of the enactment. If, however, the franchise is conferred by a contract or treaty on the part of the state, and is absolute in terms, it must be regarded as an irrevocable right."

Based upon the same common law rule, that a promise without a consideration is not binding, a grant of exemption from taxation by the legislature, unless based upon a consideration, does not bind the state, and property thus exempted by one legislature may be taxed by the next. In the recent case of Philadelphia and Gray's Ferry Passenger Railway Company's Appeal, 102 Pa. 123, in which I had the honor to deliver the opinion of the court, the rule is thus stated: " There is reason and authority for holding that a supplement to a charter of incorporation, which merely confers upon it a new right, or enlarges an old one, without imposing any new or additional burden upon it, is a mere license or promise by the state, and may be revoked at pleasure. It is without consideration to support it, and cannot bind a subsequent legislature : Johnson v. Crow, 87 Pa. 184 ; Christ Church v. Phila., 24 How. 300. In the present age of corporate greed it would be dangerous to hold the contrary doctrine. Were we to do so, corporations, instead of being the creatures of the state, might become its masters." In the same line are Tucker v. Ferguson, 22 Wall. 527; Railroad v. Supervisors, 93 U. S. 595 ; Salt Co. v. East Saginaw, 13 Wall. 373 ; Hewitt v. The Railroad Co., 12 Blatch. 452.

The right to recover damages for acts of negligence resulting in death did not exist at common law. It was conferred by the legislature, and the authority which gave it can take it away. It follows that it may limit it. The right of the legislature to barter away this right to a corporation, or to limit it, so as to make it a binding contract beyond the reach or power of subsequent legislatures, may well be doubted. It was within the power of the legislature at any time to have repealed the act of 1868. It follows that it came within the power of consti-

tutional repeal, and we are all of opinion that the provisions referred to of said act are avoided by the present constitution. I make no apology for my change of views. Had I adhered to those formerly expressed there might have been occasion for one.

Railroad Company v. Langdon, as was said by our brother STERRETT in Lewis v. Hollahan, supra, was well decided on other controlling questions, and upon all of those questions it stands as authority. To the extent, however, that it refers to the effect of the present constitution upon the act of 1868, it is now overruled.

Judgment affirmed.