William Clark, Sheriff, v. Louisville Water Company.

CASE 82—PETITION EQUITY—OCTOBER 9.

# William Clark, Sheriff, v. Louisville Water Company.

### APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

| 90 | 515 |
|---|---|
| 94 | 50 |
| 90 | 515 |
| 104 | 529 |
| 104 | 530 |
| 90 | 515 |
| 105 | 352 |
| 105 | 355 |
| 90 | 515 |
| 106 | 172 |
| 106 | 443 |
| 90 | 515 |
| 107 | 683 |
| 90 | 515 |
| o113 | 622 |
| 115 | 231 |
| 90 | 515 |
| o116 | 889 |
| 90 | 515 |
| o116 | 889 |
| 90 | 515 |
| e118 | 226 |
| 118 | 227 |
| 90 | 515 |
| 121 | 225 |

1. VALIDITY OF EXEMPTIONS FROM TAXATION.—Property owned by a municipal corporation which is not necessary to the execution of its duties as a political or governmental power, but is held by it merely for profit or for the convenience of its citizens, can not, under our Constitution, be exempted by the Legislature from taxation, except in consideration of public services; and where the act making the exemption recites that it is in consideration of the fact that the property is owned by the city or its sinking fund, and that was the real consideration, the fact that there may be an incidental public service will not support the exemption.

An act exempting from taxation the property of the Louisville Water Company is unconstitutional, although all the stock in the company is owned by the city; and the mere fact that the furnishing of water by the company may incidentally protect from fire the public buildings of the State will not support the exemption, the consideration recited in the act, which was also the real consideration, being the fact that the stock of the company is owned by the sinking fund of the city.

2. COLLECTION OF TAXES FROM WATER COMPANY.—While the property of the water company could not be seized for taxes, yet as the company has come into a court of equity seeking to enjoin the collection of the tax, it should be required to pay the taxes into court, or, failing to do so within a reasonable time, the management of the company should be intrusted to a receiver until enough is realized to pay the taxes and the costs of the proceeding.

HELM & BRUCE FOR APPELLANT.

1. Conceding, for the purpose of argument, that the act is in the form of a contract, and that the consideration for the exemption was the agreement of the Louisville Water Company to furnish water to the public fire cisterns of the city of Louisville for fire protection free of charge, yet this consideration is not a valid one, because it is no part of the *governmental duties* of the State to furnish water to the city of Louisville for fire protection free of charge, and the performance of some such governmental duty is required to constitute a valid consideration for an exemption from State taxation. (Lancaster v. Clayton,

William Clark, Sheriff, v. Louisville Water Company.

86 Ky., 376; Barbour v. Board of Trade, 82 Ky., 655; Curtis v. Whipple, 24 Wis., 353; State v. Osawkee Township, 14 Kan., 418; Lowell v. City of Boston, 111 Mass., 454; Board of Park Commissioners v. Common Council of Detroit, 28 Mich., 228; Louisville v. Commonwealth, 1 Duvall, 291; Louisville v. University of Louisville, 15 B. Mon., 742; Preston v. Louisville, 84 Ky., 121; Cooley on Taxation (2d ed.), chap. 21, p. 688; Acts 1837-8, p. 206; Acts 1841-2, pp. 139 and 141; Acts 1847-8, p. 405; Acts 1851, vol. 2, p. 626; Acts 1853-4, 2 vol., 121; Acts 1869-70, 2 vol., p. 61; Acts 1871, 1 vol., p. 325; Louisville Water Company v. Hamilton, 81 Ky., 521; Commonwealth v. First National Bank of Louisville, 4 Bush, 98.)

2. The act, when taken in connection with the general law of Kentucky taxing all water companies, and leaving the cities that are supplied by them to pay for the water they get, is a species of that "*unequal and partial legislation that disregards a general law for the advancement of a particular individual or set of individuals,*" and is invalid. (Gordon v. Winchester Building Association, 12 Bush, 110; Smith v. Warden, 80 Ky., 608; Ky. Trust Co. v. Lewis, 82 Ky., 579; Henderson Building and Loan Association v. Johnson, 10 Ky. Law Rep., 830; Mobile v. Kimball, 102 U. S., 703; Lexington v. McQuillan's Heirs, 9 Dana, 516.)

3. The real consideration, however, for the exemption, the one expressed and acted upon by the Legislature, was not, in fact, the undertaking of the water company to furnish water to the city of Louisville free of charge, but it was the simple fact that the city of Louisville owned the Louisville Water Company, and that is not a *valid* consideration. (2d Acts 1881, p. 915; Vicksburg R. R. Co. v. Dennis, 115 U. S., 668; Burnett's Code, 602, *et seq.*; Lancaster v. Clayton, 86 Ky., 373; Loan Association v. Topeka, 20 Wall., 664.)

4. The exemption can not be upheld on the suggestion that the Legislature *might* have granted the exemption simply as a consideration to induce the water company to furnish the necessary water to protect *only the public buildings* in Louisville, because the Legislature *did not* grant the exemption for that consideration; and no one can say that it would have done so if it had known that the real consideration which moved it was invalid; and if the principles of *contracts* are to be applied to the case, then the validity of the *real* consideration which induced the making of the contract, and not the validity of something which might have been the consideration of a similar contract, is the matter to be inquired into; and if the real consideration is wholly invalid, or is partly invalid and partly valid, and it can not be told that without the invalid part the contract would have been made, then the whole must fall. (Mott v. Penn. R. R. Co., 30 Penn. St., p. 9; Washington University v. Rouse, 8 Wall., 443.)

5. The act of exemption has been repealed. (Gen. Stats., chap. 92, 1 art.,

secs. 8 and 9; Gen. Stats., chap. 92, 4 art., sec. 8; Gen. Stats., chap. 92, 12 art., sec. 5.)

Counsel's contention that the third section of article 1 should be read as if it provided "that all property, real and personal, within this State, not herein expressly exempted *or exempted* by law," is based upon the theory that, unless it is done, no effect will be given to the words "by law;" but it overlooks the fact that if the words "or exempted" be interpolated, the effect will be to destroy the whole section, because the law would be exactly the same without the section as with it, subject to the interpretation of counsel for appellee.

WILLIAM LINDSAY, LANE & BURNETT, T. L. BURNETT FOR APPELLEE.

Brief not in record.

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

The real estate and improvements thereon of the appellee, the Louisville Water Company, were assessed for State and county taxes for the year 1887, at the value of two million two hundred and fifteen thousand dollars. The taxes amount to eleven thousand three hundred and seventy-one dollars and seven cents; and the tax-bills therefor being in the hands of the sheriff, and he about to seize and sell thereunder certain property of the appellee in use in its business, it, by this suit, enjoined him from so doing, the principal ground upon which it claims relief being that its property is by law exempt from assessment and taxation. This claim is based upon an act of the Legislature of April 22, 1882, and which reads as follows:

"1. That it shall be the duty of the Louisville Water Company to furnish water to the public fire cisterns and public fire-plugs or hydrants of the city of Louisville for fire protection free of charge.

"2. The sinking fund of the city of Louisville being

the owner of the stock of the Louisville Water Company, and said water company, by virtue thereof, is the property of the city of Louisville, therefore, the Louisville Water Company is hereby exempted from the payment of taxes of all kinds, of whatever character, State, municipal and special.''

Upon the hearing in the lower court the appellee moved to make the temporary injunction, which had been granted, perpetual, while the appellant, inasmuch as the property of the company in use can not be seized and sold, thus depriving the local public of the benefits derived from it, moved that it be compelled by rule to pay the taxes into court, or failing to do so, that its property be placed in a receiver's hands until enough should be realized to pay them. This relief was also asked in the answer, to which a demurrer was sustained. The motion of the appellant was overruled, and the injunction perpetuated, the court not only holding that the property of the company could not be seized and sold, but that it was not liable for the taxes.

The constitutionality of the act *supra* is involved. It is claimed for the company that it has a vested right to the exemption resting in contract. That by the passage of the act of the Legislature, and its acceptance by the company, a contract was entered into which entitles it to the exemption. As such a privilege is in derogation of the common right; as the exemption of one person from taxation places an additional burden upon the other tax-payers of the State, it will not be presumed, but must appear by clear grant.

It is true, as has often been said, that exemption is the exception and not the rule. Upon the other hand, however, where the Legislature clearly grants this privilege, or attempts to do so, its action must be presumed constitutional.

As the language of the act in this case is plain, it becomes the delicate duty of this court, keeping in mind the presumption in favor of legislative action, to determine whether, in its enactment, the Legislature has gone beyond the constitutional limit.

The first section of our Bill of Rights provides that "no man or set of men are entitled to exclusive, separate public emoluments or privileges from the community, but in consideration of public services."

The appellant contends, first, that if it were true the Legislature was moved to the passage of the act upon the idea of the rendition of a public service, yet, in fact, the company renders no such public service as the Constitution contemplates; and, second, that this was not the reason for its enactment, and that it is altogether unsupported by any valid consideration, or such as the Constitution recognizes.

We shall pass· by the question whether the rendition of a *local* public service, as to furnish the city of Louisville with water, is a valid consideration for an exemption from State taxation, thereby imposing an additional burden upon all the balance of the people of the State, or whether it is a governmental duty of the State to furnish to a city water for fire protection and sanitary purposes free of charge, either by direct taxation upon all the people of the State, or indirectly by an exemption from taxation in favor

of the one doing so; and if so, being, therefore, a valid consideration for such an exemption. This is a question as to which there is a difference of opinion; and in view of the conclusion we have reached as to the second position taken by the appellant, it is unnecessary to consider it.

We think it evident that the furnishing of water by the company to the city for fire protection free of charge was not what induced the passage of the act. Its recitals, aside from the express statement in it of the reason, make this quite plain. It says:

"The sinking fund of the city of Louisville, being *the owner of the stock of the Louisville Water Company, and said water company, by virtue thereof, is the property of the city of Louisville, therefore,* the Louisville Water Company is hereby exempted from the payment of taxes of all kinds, of whatever character, State, municipal and special."

According to the legislative recital the sinking fund of the city owns the entire stock of the water company. There is nothing in the record showing otherwise, and it must, therefore, be assumed to be true. While the sinking fund department is a separate corporation from that of the city proper, yet it is merely the money-making branch of the municipal government. It has charge of its funds and its investments, whether in bank, railroad, water company stocks, or other valuable and money-making securities.

We see, therefore, that the property and rights of the water company belong to the city. While, therefore, the act recites that it shall be the duty of the water company to furnish water to the public fire

cisterns and public fire plugs or hydrants of the city for fire protection, yet this could not have been the consideration that induced the passage of the act, since it made no difference to the city whether a million of dollars or a penny might be paid for this service, because it was the owner of the rights and property of the water company, and it would, therefore, be but a payment to *itself*. It can not be supposed, therefore, that the Legislature intended to relinquish over ten thousand dollars of taxes annually in consideration that the city would not charge *itself* for water furnished by *itself*. It is useless to inquire why the act declared that the water company should furnish water to the city free of charge. Perhaps, as suggested by counsel, it was merely to avoid the trouble of keeping an account between the sinking fund department and the city proper. The reason which induced the attempted granting of the exemption must, therefore, have been, as indeed the act recites, that the sinking fund of the city, or in other words the city itself, owned all the water company stock. It says: "The sinking fund of the city of Louisville being the owner of the stock of the Louisville Water Company, and said water company, by virtue thereof, is the property of the city of Louisville, *therefore* the Louisville Water Company is hereby exempted from the payment of taxes of all kinds, of whatever character, State, municipal and special."

We have, therefore, an express recital by the Legislature of its reason for the attempted exemption, and that this was the true and only one is confirmed

beyond question by the other recitals of the act. The question, therefore, is, did the fact that the sinking fund, or, in other words, the city, owned the water company stock, constitute a valid consideration for the exemption?

A municipal corporation has a double character. In one it acts strictly in its governmental capacity. In the other for the profit or convenience of its citizens. Considered in the latter light, it occupies the attitude of a private corporation merely, while in the former it is an arm of the State government, or a part of its political power. It is an *imperium* in *imperio*. The property necessary to the exercise of those duties which are strictly governmental is exempt from taxation, but this is not so of that which is held by the municipality for the comfort of its citizens, individually or collectively, or for money-making purposes merely. While the sinking fund of the city of Louisville is a distinct corporation, yet it is owned by the city, and merely controls its funds. It discharges no governmental duties, and was created merely to make money for the city. It may invest the funds in stocks of any character, if they are likely to bring good returns, like any other private corporation. It will hardly be contended that if it were to invest surplus money in a private manufacturing company, that the Legislature could constitutionally exempt that company from taxation. In short, the city in its private and not its governmental character owns the stock and property of the water company, and this ownership is not necessary to the execution of its duties as a political or governmental

power. This being so, it stands upon the same foot-
ing as would any individual or body of persons if
like privileges had been conferred upon them, and
can not be constitutionally exempted from State taxes
save in consideration of public services. The fact
that the furnishing of the water may incidentally
protect from fire the public buildings of the State
will not support the exemption. The privilege was
not conferred, as the Legislature declared, and, as we
have otherwise shown, for governmental purposes, but
merely for a reason which will not support it. It
arose out of considerations relating to the private
and pecuniary advantage of the city, and in which
the State at large had no interest.

It was said in Bailey v. City of New York, 3 Hill,
539: "But if the grant was for purposes of private
advantage and emolument, though the public may
derive a common benefit therefrom, the corporation
(the city), *quoad hoc*, is to be regarded as a private
company. It stands on the same footing as would
any individual or body of persons upon whom the
like special franchises had been conferred."

If it be said that the exemption should be upheld
if it be, in fact, supported by any valid consideration,
although the recited one be invalid, we reply that the
real consideration, and the one which moved the parties
to the transaction, is to be regarded. The one acted
upon by the Legislature, and expressed in the act,
and which must have been understood by the city,
was the simple fact that it owned the stock in the
water company. This was not a valid consideration,
and we have already seen that mere incidental pro-

tection of the public buildings does not aid the matter.
The so-called contract was, therefore, void at its in-
ception.    Instead of being impaired in any way for-
bidden by law, it never had any existence; and it
seems to us well that we feel at liberty to so declare,
because we have a general law taxing water companies,
and if one company be exempt, that of any other city
has an equal right to ask the privilege.   A statute
exempting one is certainly open to the objection of
impolicy, if, indeed, it be not such unequal and partial
legislation as is forbidden by law.

The appellee, by this suit, came into court asking
equitable relief by injunction or the exercise of an
extraordinary remedy.   Asking equity, it may well
be required first to do equity; and being in court,
and liable for the tax, and the chancellor being in
possession of the case, while its property in use in
its business could not be seized, it should have been
required to pay the taxes into court; or failing to
do so within a reasonable time, the management of
it should have been intrusted to a receiver until enough
was realized to pay them and the costs of the proceed-
ings.  (Louisville  Water  Company  v. Hamilton,  81
Ky., 517.)

The judgment is reversed, and cause remanded, with
directions to render a judgment as above indicated.

Judge Pryor, dissenting, delivered the following
opinion:

In determining the constitutionality of the act in
question, it is only necessary to consider sections one
and two.   Section one provides "that it shall be the

duty of the Louisville Water Company to furnish water to the public fire cisterns and public fire-plugs or hydrants of the city of Louisville for fire protection free of charge."

"Sec. 2. The sinking fund of Louisville being the owner of the stock of the Louisville Water Company, and the said water company, by virtue thereof, is the property of the city of Louisville, therefore, the Louisville Water Company is hereby exempted from the payment of all taxes, of all kinds, of whatever character, State, municipal and special."

It is the settled doctrine of this State that no exemption of one's property from taxation is valid where like property of another is taxed, unless the exemption proceeds from the consideration of public service. Such legislation, in the absence of this consideration, is in direct violation of the Bill of Rights that prohibits the granting of such a special immunity. Nor can it be maintained that the public service constituting the consideration for the exemption must be for the discharge of a duty for which an appropriation from the State Treasury might be made, or that the public service should directly benefit the whole people of the State. If this be the correct rule, seminaries of learning and all charitable institutions could receive no support in the way of legislative exemption. It is not necessary, however, to review the cases on this subject, as the opinion of the majority of the court is based upon the idea that no consideration exists in this case for the exemption, and I shall, therefore, consider that question alone, being satisfied, after a careful examination of the record, that the exemption

of the water company is not only valid, but was an act of justice and right on the part of the law-making power to the tax-payer of the city of Louisville. It is admitted, or, if not, the fact exists, that the water company received payment for furnishing the water to these public fire cisterns and fire-plugs up to the year 1882, and then the act was passed making the exemption.

The city of Louisville purchased all, or nearly all, of the stock of the water company, and was, at the time the exemption was made, the sole owner of the property, with the exception of one or two shares of the stock. It is, therefore, argued that because the city owned the entire stock it was immaterial whether it received a penny or thousands of dollars for furnishing this water; it was but a charge in the first place to the city, and then a payment back to it of the money expended, and for that reason the supply of water for public purposes could not have constituted the consideration for relieving the company from taxation, and the only motive inducing the Legislature to grant the privilege consisted in the fact that the city owned the water company, as recited in the second section of the act.

It is further argued, and so adjudged in the principal opinion, that the city can only be regarded as a stockholder in a private corporation, and not as the owner of this stock in its governmental capacity. The city of Louisville contains near two hundred thousand inhabitants, and has within its corporate limits public buildings belonging to the Federal Government, and its own court buildings and other prop-

erty necessary to the conduct of State affairs. It acquired the stock of the water company from revenues collected from the tax-payers within its limits, and made expenditures of large sums of money for that purpose, that, when invested for both public and private use, is now sought to be made liable for taxes by the collecting officer, with the legislative exemption remaining in full force. It is not the water company or the sinking fund that is called on to pay these back taxes, amounting now to near seventy thousand dollars, but the tax-payer of the city, represented in name only by the two corporations. The tax-payer has been already taxed to enable the city to make the purchase of the water company or to pay for the stock in the corporation, and, after being taxed for that purpose, is again taxed for the water he drinks and uses on his premises, receiving no other compensation whatever except this convenience, that becomes a necessity in every densely populated city. A plain distinction exists, therefore, between a private company furnishing water to the city and its population at certain specified rates and the city taxing the property-owner in order that he may obtain water for his own use, and then applying the right to the use in part to the protection of the public property located within the city; or, if taxed for more than will supply the city, the additional tax finds its way to the sinking fund for the payment of the debts of the municipality. Nor is the protection afforded the public or the public buildings of the city merely incidental, as the act of April 22, 1882, makes it the *duty of this*

corporation to furnish the water to the public fire cisterns and public fire-plugs or hydrants free of charge. If this water company, therefore, owned by the city, should refuse or fail to furnish this water, and a public building is destroyed by fire by reason of this neglect, it is evident that the company would be responsible for the loss. A public duty required to be performed, for which an action would lie for a failure to discharge it, and still it is insisted that the reason prompting the Legislature to make the exemption was because the city of Louisville, in fact, owned the stock of the corporation. I have no doubt that such was the inducement; and why? Because the tax-payer had assumed heavy burdens to obtain the stock, and a portion of those burdens being used by the city for the protection of both public and private property, it was thought both equitable and proper that the exemption should be made. The city has assumed a duty that not only affords incidental protection, but by the express terms of the charter it is made obligatory on the city to discharge that duty; and in the very next section following the exaction of the duty is the recital that as the city owns the stock *the water company is exempt from taxation.* Where there is an exemption we look to the act to see if there is a public service to perform, and if none, the exemption must be held invalid. If there is such a consideration, the statute must stand, however impolitic the Legislature may be. After the exaction of this duty and its full performance by the city, the collector of taxes on behalf of the State levied on the property of the water company for the State taxes; levied the

William Clark, Sheriff, v. Louisville Water Company.

tax-writ upon property that the citizen had been taxed to purchase in order to supply an absolute want, that he is again taxed for as the water enters his dwelling, and required to maintain, by taxation under the power of the municipal government, the existence of the water-works for the purpose of performing a public duty imposed by the act under consideration.

It seems to me neither just nor equitable to consider the municipality as the owner of a private corporation when attempting to impose such taxation on the tax-payer, who is the real party to this action, and who receives nothing but the water he uses and drinks in the way of private gain. The Legislature, viewing the question in this light, granted the exemption, and to make it binding on the State, at least so long as it stands unrepealed, required the performance of a public duty that the city has never failed to discharge.

The Supreme Court, in 115 U. S., 691, in the case of the Louisville Gas Co., held that the distribution of gas in densely populated districts was a matter of which the public could assume control, and in supplying it for public and private use was such a public service as authorized the grant of the exclusive privilege. The same doctrine was recognized by that court in the case of the New Orleans Water-works Co., 115 U. S., 674. Why the State may not impose upon a municipality the performance of a service for the public good I am unable to perceive. It is but a subordinate agency of the State government. Here the entire expense of furnishing water is placed upon the tax-payers of the city, and this is proper, because they are the real beneficiaries; but

the Legislature, knowing the oppressive burdens that pertain to the administration of municipal government in the imposition of taxes, has attempted to aid the tax-payer by releasing the State taxes upon a consideration resulting in the public good, and for a failure to comply with or construe the consideration prompting the exemption, if loss should occur, a legal liability would at once arise, and to discharge which a resort to the tax-payer must be again had. There can be no constitutional inhibition to such legislation, and to assign another motive on the part of the Legislature for the exemption than the consideration expressly stated in the act is no argument against its validity, or a sufficient reason for declaring the act of exemption unconstitutional and void. I am, therefore, unwilling to impose upon the tax-payer the sum of seventy-five thousand dollars in the way of back taxes in the face of a legislative exemption standing unrepealed, based upon a sufficient consideration, and made with a view of affording that legislative aid to the tax-payer upon his performing a public service.